**Dan MANCINELLI, Plaintiff–Appellee,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant–Appellant.**

**No. 94–15770.**

United States Court of Appeals, Ninth Circuit.

Sept. 5, 1996..

Timothy J. Long, Orrick, Herrington & Sutcliffe, Sacramento, California, for defendant-appellant.

Keith A. Ehrman, McGuinn, Hillsman & Palefsky, San Francisco, California, for plaintiff-appellee.

Before: THOMPSON, KLEINFELD and TASHIMA, Circuit Judges.

Dissent to Order by Judge KLEINFELD.

Pursuant to the parties' joint motion for dismissal, the Memorandum disposition, filed June 13, 1996, is withdrawn. The appeal is **DISMISSED** and the case is **REMANDED** to the district court for its determination of whether its judgment should be vacated. *See U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* — U.S. —, —, 115 S.Ct. 386, 393, 130 L.Ed.2d 233 (1994); *Dilley v. Gunn,* 64 F.3d 1365, 1371 (9th Cir.1995).

KLEINFELD, Circuit Judge, dissenting:

This case went all through the appellate process. After we decided it and issued a memorandum disposition, the parties settled. We do not know the terms of the settlement.

Our order today, withdrawing our disposition, is based on the parties' stipulation that the disposition should be withdrawn, nothing else. We have not reconsidered the disposition on the merits. I dissent from the order because I think there is a substantial risk that other litigants might infer that we have reconsidered our disposition and withdrawn it based on the merits of the case.

*U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership,* —— U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) establishes that "[i]t is petitioner's burden ... to demonstrate ... equitable entitlement to the extraordinary remedy of vacatur." *Id.* at ——, 115 S.Ct. at 392. *Bancorp*'s holding applies only to whether the district court judgment should be vacated, but its reasoning implies that an appellate disposition filed prior to settlement should not automatically be withdrawn.

This case was not moot when we issued our memorandum disposition. It became moot subsequently because it was settled, not through happenstance. The disposition we filed is "not merely the property of private litigants," and there is a public interest in leaving it on the record because of its value "to the legal community as a whole." *Id.* No reason has been shown to justify withdrawing it. Our withdrawal of the disposition in this case will only encourage litigants to "roll the dice ... if an unfavorable outcome can be washed away by a settlement related vacatur." *Id.* at ——, 115 S.Ct. at 393.

The institutional interest in preserving the record of the memorandum disposition is less substantial than it would be with a published opinion, but it is not absent. Although Ninth Circuit Rule 36–3 prohibits the disposition from being cited to us, there is no rule prohibiting citation before other tribunals. Counsel for IBM and other employers will likely use the order in negotiations, if opposing counsel point to the disposition as an indicator of a possible result. Our "unpublished" dispositions are published in Lexis and Westlaw, and in specialized reporters dealing with such subjects as employment law. Lawyers use them to get a general sense of who is winning particular kinds of cases, in order to make the predictions necessary for settlement negotiations.

The "joint brief" of the parties says that the parties "diligently worked through the office of the Chief Court Mediator in an attempt to negotiate a settlement of the case," and "voluntary settlement of disputes furthers important societal and judicial goals." No "important societal and judicial goals" are furthered by settlement after a case has gone all the way through trial, appeal, and appellate decision. The settlement came too late to save any of the court's time. We studied the briefs, heard argument, decided the case, and wrote a decision.

What motivates me to dissent is that I do not think the loser in litigation should be allowed to buy an eraser for the public record. That is what the stipulation amounts to. A post-loss eraser is likely to hamper efforts at prompt, fair settlement of cases. An institutional litigant settles cases prior to disposition partly to avoid the risk of the particular case, and partly to avoid the consequences for future cases. If the institutional litigant likely to have similar future cases is given an eraser, then one of its important reasons for early settlement disappears. An eraser might be appropriate if there were some unfair res judicata or issue preclusion effect of the loss, or for some other reason, but no reason has been suggested to us in this case. Doubtless IBM does not want litigants in other cases to know that it lost this one, and has paid Mancinelli enough so that he is willing to cooperate with IBM's desire to erase the record of its loss. But if an institutional litigant can hide its losses, then it is encouraged to litigate financially weaker adversaries to exhaustion, confident that it can buy an eraser for its defeats.

The public's interest is in settlement before all the work is done. Once the court has spent its time reading the briefs, hearing argument, conferring and writing a decision on this case, withdrawal of our disposition

does nothing to open a spot on our docket for another litigant. The eraser thwarts the public interest in publishing results so that the results of litigation are predictable.